HORACE W. PARSONS, APPELLEE, v. THEODORE F. BARNES ET AL., APPELLANTS.

FILED MARCH 26, 1912.   No. 16,633.

1. Petition discussed in the opinion, *held* to state a cause of action for damages for fraud.

2. Evidence examined and considered in the opinion, *held* sufficient to sustain a verdict in favor of plaintiff for such damages.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Edward F. Pettis, Theodore F. Barnes* and *Charles O. Whedon,* for appellants.

*T. J. Doyle* and *G. L. De Lacy, contra.*

FAWCETT, J.

Plaintiff paid $200 for what he supposed was a piece of soldiers' additional homestead scrip entitling him to enter 40 acres of government land. The scrip proved to be worthless and the money paid therefor was never returned. Plaintiff charges his loss to the fraud of defendants and this is an action to recover from them resulting damages. Trial to a jury. Verdict in favor of plaintiff for $371.75. Defendants appeal.

Plaintiff was a dentist residing at Wamego, Kansas. Defendant Theodore F. Barnes was engaged in buying and selling soldiers' scrip, having an office at Lincoln, Nebraska. The Lincoln Safe Deposit & Trust Company, defendant, was transacting at Lincoln, Nebraska, the business indicated by its name, and defendant William E. Barkley, Jr., was its managing officer. The petition alleges: Defendants were partners in the business of buying and selling soldiers' scrip. For the purpose of locating 40 acres of land in Pottawatomie county, Kansas, plaintiff wrote to Barnes in April, 1901, to send him soldiers' scrip. What purported to be a 40-acre scrip of John W. Bowman, assigned to plaintiff by Barnes, was sent to the First National Bank of Wamego, Kansas, by the trust company and Barkley, with instructions to collect $200 from plaintiff therefor. The scrip was represented by defendants to be valid. By means of a draft, payable to the trust company, plaintiff, through the National Bank of Wamego, paid defendants $200. The draft was cashed and the money kept and appropriated. Believing the scrip to be valid, as it was represented to be, plaintiff went to the United States land office at Topeka for the purpose of locating 40 acres of land, but failed. The scrip was of no value. Bowman was not entitled to any additional entry under the United States land laws. The scrip was fraudulent and defendants had no right to make any entry thereunder. Defendants, well knowing that the scrip was fraudulent, and with the pur-

pose of cheating and defrauding plaintiff out of $200, entered into a conspiracy and induced him to buy the scrip and to pay that sum therefor. Plaintiff returned the scrip to the trust company December 6, 1901, and demanded of defendants the return of his money. The scrip has not been returned to plaintiff nor the money refunded.

The alleged partnership and conspiracy of defendants and all allegations charging them with fraud are denied in the answers. In addition, Barnes alleges that plaintiff bought the scrip after satisfying himself upon a full examination of its value and validity. Barkley and the trust company allege that they had no connection with the transaction, excepting as the collection agents of Barnes, and that they had no other interest in the scrip or in the proceeds of the sale.

The principal points relied upon for a reversal are the insufficiency of the petition to state a cause of action and failure of the proof to support the verdict.

One of the objections to the petition is that it does not allege that plaintiff relied upon any representation of any of the defendants. The allegations of the petition must be construed with reference to the acts of congress creating soldiers' additional homestead rights and authorizing the transfer thereof. 2 U. S. Comp. St., secs. 2304, 2305. Every soldier who is entitled to the benefit of the act, if he has entered less than 160 acres of land, is permitted to enter so much more as, when added to the quantity previously entered, shall not exceed 160 acres. By an amendatory act, a right to the additional homestead was made transferable. It thus appears that scrip, representing a fractional part of 160 acres as a soldiers' additional homestead right of entry, is valuable only for a specific purpose. It is not like ordinary personal property, and, unless it can be used for that purpose, it is absolutely worthless as a lawful investment. The petition shows that plaintiff applied for scrip to be used in locating 40 acres of government land. Valid scrip only would answer that purpose. When defendants sent the scrip to the Kansas bank, with

a demand for $200 upon its delivery to plaintiff, the law implied what is alleged in the petition, namely, that defendants represented it to be valid for plaintiff's purpose. It is further alleged that plaintiff believed that the scrip was what it was represented to be; that it was valid scrip; that he went to Topeka to locate land under it, but could not do so; that he was induced to pay $200 therefor, defendants well knowing that it was worthless. If the petition does not allege in direct terms that plaintiff relied upon the representation of defendants, it does allege facts from which such reliance is fairly shown. Besides, there was a long trial, in which that issue was contested. We do not think defendants were misled or their rights prejudiced by reason of any imperfection in the plea of plaintiff's reliance upon the representation of defendants.

The petition is also challenged upon the ground that it contains no allegation of fact to show why the Bowman scrip was of no value. This point seems also to be without merit. It is alleged that "Bowman was not entitled to any additional entry under the United States land laws as a soldier." In connection with other facts stated, and in view of the acts of congress to which we have already adverted, this is a sufficient averment that Bowman had previously entered 160 acres of land and therefore could acquire no further rights to government land.

We do not think the verdict should be set aside as not being sustained by the evidence. A partnership was alleged. Barnes was engaged in selling scrip. Barkley admitted that the trust company had possession of the Bowman scrip, that he sent it to the Kansas bank to be delivered upon payment of $200, that he collected that sum from plaintiff, that he was the managing officer of the trust company and that the Bowman scrip was returned to the bank.

It is shown that three pieces of scrip were sent to plaintiff. The first was the Bowman scrip. The second was the Maxwell scrip, and, though worthless, plaintiff was asked to accept it in place of the former one. The third

was described as the Ellis scrip, and purported to represent 80 acres, though it was worthless except for 40 acres. Plaintiff testified that after he had returned the Bowman scrip and after he had returned the Maxwell scrip in February, 1902, he visited Lincoln and had a conversation with Barnes, whom he met on the street, and with Barkley. The conversation with Barkley took place in the office of the trust company. In testifying to the conversation with Barkley, he said (the questions being omitted) : "We had considerable conversation. I asked them with regard to Mr. Barnes whether he had any money on deposit or not, and he told me that he did not have any on deposit. I asked him if he thought there was any way in which he thought I could make a collection from Mr. Barnes, and he said he did not think there was; that Mr. Barnes was not in a condition to pay me. Then I asked him if he had any scrip in the bank and he said that they had such scrip there, and he said the way that we do business is like this: The scrip is sent to the bank. It is sent out and collections made and money returned and each get their share of it. I had some conversation with him in regard to this piece of scrip of Maxwell's. I asked him what became of that piece of scrip. I asked him where Mr. Barnes usually sold this scrip, or what disposition he made of it. He told me that Mr. Barnes—that he had no right to let me know what Mr. Barnes' business was, or let me into the arrangements that Mr. Barnes had with other parties, and it was really none of my business."

This is the only direct testimony that defendants were in partnership for the division of profits, but it is at least to some extent corroborated by the testimony of Barnes, who stated in answer to questions that his recollection in the beginning was that the Bowman scrip came to Barkley as all others; that if any scrip came to him he immediately handed it over to Barkley and wrote the parties it was there; that he did not remember of remitting any money to Bowman for the scrip; that Barkley always did

the transmitting for scrip. He further testified: "Q. Now, you have stated that the matter of payment to the men from whom you bought the scrip, including Bowman, was left to Barkley and that he alone could tell about that. Now, in each of these cases did Barkley retain the amount of money you had agreed to pay to the men you had bought the scrip from? A. He kept out his charges and all other charges that were against the claim. Q. Including the price of the scrip itself? A. Yes, sir; that I was paying to the men."

When the Ellis scrip was sent to the Kansas bank, plaintiff garnished it to satisfy his claim for $200. It is apparent that he could not apply the scrip to that purpose, because it did not belong to Barnes or to the trust company or to Barkley. When this matter was in controversy, Barkley, as the officer of the trust company, wrote to the banker in Kansas that Barnes had no interest whatever in the Ellis scrip and employed counsel to defend the suit. Acting in like manner, he tried to induce plaintiff to take three separate pieces of scrip, two of which were worthless, and the third not being as represented. In each instance the soldier had been paid nothing. The record shows that the trust company, which is not a bank and does not receive deposits, collected in advance the money for the scrip, when sold. In all of these three cases nothing had ever been paid to the soldier whose scrip was being handled. It is difficult to understand the denial by Barkley of all interest except as a collecting agent. In the matter of the Bowman scrip he performed a great deal of service for a collection fee of one dollar, which is the amount he credited to the trust company on its books. The circumstances shown, in which all three of the defendants participated, tend to prove a greater interest of the trust company and Barkley than that of mere collecting agents. The testimony is scattered through 500 pages, and direct evidence, other than that referred to, outside of the facts themselves, is not found in the bill of exceptions. If these circumstances

and the direct testimony of plaintiff, corroborated by the
indefinite testimony of Barnes, do not show fraud and a
combination of the three defendants, then the evidence
does not sustain the verdict. The jury, however, found it
was sufficient, and the district court refused to disturb
their finding. We must also refuse.

                                                    AFFIRMED.

REESE, C. J., not sitting.